Justice Breyer
delivered the opinion of the Court.
The Fair Labor Standards Act of 1938 (Act) sets forth employment rules concerning minimum wages, maximum hours, and overtime pay. 52 Stat. 1060, 29 U. S. C. § 201 et seq. The Act contains an antiretaliation provision that forbids employers
“to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in such proceeding, or has served or is about to serve on an industry committee.” § 215(a)(3) (emphasis added).
We must decide whether the statutory term “filed any complaint” includes oral as well as written complaints within its scope. We conclude that it does.
I
The petitioner, Kevin Kasten, brought this antiretaliation lawsuit against his former employer, Saint-Gobain Performance Plastics Corporation. Kasten says that Saint-Gobain located its timeclocks between the area where Kasten and *5 other workers put on (and take off) their work-related protective gear and the area where they carry out their assigned tasks. That location prevented workers from receiving credit for the time they spent putting on and taking off their work clothes — contrary to the Act’s requirements. In a related suit the District Court agreed with Kasten, finding that Saint-Gobain’s “practice of not compensating ... for time spent donning and doffing certain required protective gear and walking to work areas” violated the Act. Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 954 (WD Wis. 2008). In this suit Kasten claims unlawful retaliation. He says that Saint-Gobain discharged him because he orally complained to Saint-Gobain officials about the timeclocks.
In particular, Kasten says that he repeatedly called the unlawful timeclock location to Saint-Gobain’s attention — in accordance with Saint-Gobain’s internal grievance-resolution procedure. See Brief for Petitioner 4 (quoting SaintGobain’s Code of Ethics and Business Conduct as imposing upon every employee “the responsibility to report . . . suspected violations of . . . any applicable law of which he or she becomes aware”); id., at 4-5 (quoting Saint-Gobain’s Employee Policy Handbook as instructing employees with “questions, complaints, and problems” to “[c]ontact” their “supervisor^] immediately” and if necessary “take the issue to the next level of management,” then to the “local Human Resources Manager,” then to “Human Resources” personnel at the “Regional” or “Headquarters” level).
Kasten adds that he “raised a concern” with his shift supervisor that “it was illegal for the time clocks to be where they were” because of Saint-Gobain’s exclusion of “the time you come in and start doing stuff”; he told a human resources employee that “if they were to get challenged on” the location in court, “they would lose”; he told his lead operator that the location was illegal and that he “was thinking about starting a lawsuit about the placement of the time clocks”; *6 and he told the human resources manager and the operations manager that he thought the location was illegal and that the company would “lose” in court. Record in No. 3:07-cv-00686-bbc (WD Wis.), Doe. 87-3, pp. 31-34 (deposition of Kevin Kasten). This activity, Kasten concludes, led the company to discipline him and, in December 2006, to dismiss him.
Saint-Gobain presents a different version of events. It denies that Kasten made any significant complaint about the timeelock location. And it says that it dismissed Kasten simply because Kasten, after being repeatedly warned, failed to record his comings and goings on the timeelock.
For present purposes we accept Kasten’s version of these contested events as valid. See Scott v. Harris, 550 U. S. 372, 380 (2007). That is because the District Court entered summary judgment in Saint-Gobain’s favor. 619 F. Supp. 2d 608, 610 (WD Wis. 2008). And it did so, not because it doubted Kasten’s ability to prove the facts he alleged, but because it thought the Act did not protect oral complaints. Id., at 611-613. On appeal, the Seventh Circuit agreed with the District Court that the Act’s antiretaliation provision does not cover oral complaints. 570 F. 3d 834, 838-840 (2009).
Kasten sought certiorari. And in light of conflict among the Circuits as to whether an oral complaint is protected, we granted Kasten’s petition. Compare Hagan v. Echostar Satellite, L. L. C., 529 F. 3d 617, 625-626 (CA5 2008) (antiretaliation provision covers oral complaints); Lambert v. Ackerley, 180 F. 3d 997, 1007 (CA9 1999) (en banc) (same), with Lambert v. Genesee Hospital, 10 F. 3d 46, 55-56 (CA2 1993) (antiretaliation provision does not cover informal complaints to supervisors). See also Pacheco v. Whiting Farms, Inc., 365 F. 3d 1199, 1206 (CA10 2004) (antiretaliation provision covers unofficial assertion of rights); EEOC v. White & Son Enterprises, 881 F. 2d 1006, 1011-1012 (CA11 1989) (same); Moore v. Freeman, 355 F. 3d 558, 562-563 (CA6 2004) (assuming without discussion that oral complaints are covered); *7 Brennan v. Maxey’s Yamaha, Inc., 513 F. 2d 179, 181 (CA8 1975) (same).
II
The sole question presented is whether “an oral complaint of a violation of the Fair Labor Standards Act” is “protected conduct under the [Act’s] anti-retaliation provision.” Pet. for Cert. i. The Act protects employees who have “filed any complaint,” 29 U. S. C. § 215(a)(3), and interpretation of this phrase “depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis,” Dolan v. Postal Service, 546 U. S. 481, 486 (2006). This analysis leads us to conclude that the language of the provision, considered in isolation, may be open to competing interpretations. But considering the provision in conjunction with the purpose and context leads us to conclude that only one interpretation is permissible.
A
We begin with the text of the statute. The word “filed” has different relevant meanings in different contexts. Some dictionary definitions of the word contemplate a writing. See, e. g., Webster’s New International Dictionary 945 (2d ed. 1934) (def. 4(a)) (to file is to “deliver (a paper or instrument) to the proper officer so that it is received by him to be kept on file, or among the records of his office” (emphasis added)); Webster’s Ninth New Collegiate Dictionary 462 (1983) (def. 2(a)) (one definition of “file” is “to place among official records as prescribed by law”).
But other dictionaries provide different definitions that permit the use of the word “file” in conjunction with oral material. One can, for example, file an oral statement that enters a matter “into the order of business.” 1 Funk & Wagnalls New Standard Dictionary of the English Language 920 (rev. ed. 1938) (def. 2) (to file is to “present in the regular way, as to a judicial or legislative body, so that it shall go *8 upon the records or into the order of business”). This possibility is significant because it means that dictionary meanings, even if considered alone, do not necessarily limit the scope of the statutory phrase to written complaints. Cf. Crawford v. Metropolitan Government of Nashville and Davidson Cty., 555 U. S. 271, 277 (2009) (looking for the “limits” of a linguistic phrase rather than what “exemplifies]” its application).
In addition to the dictionary definitions, we have found that legislators, administrators, and judges have all sometimes used the word “file” in conjunction with oral statements. Thus state statutes sometimes contemplate oral filings. See, e. g., Alaska Stat. § 47.32.090(a) (2008) (“file a verbal or written complaint”); Cal. Health & Safety Code Ann. § 17055(a) (West 2006) (“file an administrative complaint orally or in writing”); D. C. Code § 7-1231.12(a)(2)(B) (2001) (“filing his or her grievance, orally or in writing”); Ga. Code Ann. §§31-8-124(a), (c), 31-8-134(b) (2009) (“to file a grievance,” a person may “submit an oral or written complaint”); Ind. Code § 27-8-28-14(a) (2009) (“file a grievance orally or in writing”); Me. Rev. Stat. Ann., Tit. 34-B, §5604(3)(B) (2009) (“filed through an oral request”); Miss. Code Ann. § 69-47-23(4) (2005) (“file a written or oral complaint”); Mo. Rev. Stat. § 198.088.3(3) (2009) (to have a complaint “filed,” a person “shall write or cause to be written his grievance or shall state it orally”); Nev. Rev. Stat. §§618.336(2)(a), 618.341(l)(a) (2009) (“oral or written complaint filed”); N. J. Stat. Ann. § 30:4C-12 (West 2008) (“written or oral complaint may be filed”); N. Y. Ins. Law Ann. §§ 3217-a(a)(7), 4324(a)(7) (West 2006) (“file a grievance orally”); N. Y. Pub. Health Law Ann. § 4408(l)(g) (West Supp. 2010) (“file a grievance orally”); Pa. Stat. Ann., Tit. 40, §§991.2141(a)-(b) (Purdon 1999) (“file a . . . written or oral complaint”); Tex. Ins. Code Ann. §§ 1305.401(a)-(b) (West 2009) (“oral or written complaint” must be “file[d]”); Wash. Rev. Code §§90.64.030(3), (5) (2008) *9 (“complaints have been filed ... as the result of either an oral or a written complaint”).
Regulations promulgated by various federal agencies sometimes permit complaints to be filed orally. See, e. g., 32 CFR §842.20 (2010) (“[fjiling a claim” may proceed “orally or in writing”); 42 CFR § 422.564(d)(1) (2009) (“file a grievance . . . either orally or in writing”); § 423.564(d)(1) (same); §438.402(b)(3)(i) (“file a grievance either orally or in writing”); § 494.180(e) (“file an oral or written grievance”); 49 CFR § 1503.629(c) (2009) (“[f]iling of motions .. . must be in writing or orally on the record” (emphasis deleted)); 42 CFR § 438.402(b)(3)(ii) (2009) (“file an appeal either orally or in writing”).
And a review of contemporaneous judicial usage, cf. Utah v. Evans, 536 U. S. 452, 475 (2002), shows that oral filings were a known phenomenon when the Act was passed. See, e. g., Reed Oil Co. v. Cain, 169 Ark. 309, 312, 275 S. W. 333, 334 (1925) (“appellee filed ... an oral complaint”); Tingler v. Lahti, 87 W. Va. 499, 503, 105 S. E. 810, 812 (1921) (“complaint subsequently filed, either oral or written”); Ex parte Mosgrove, 47 Okla. Crim. 40, 287 P. 795 (1930) (only “complaint ... filed against him” was “oral complaint of the town marshal”); Indian Fred v. State, 36 Ariz. 48, 52-53, 282 P. 930, 932 (1929) (“filed an oral motion to quash”); Dunn v. State, 60 Okla. Crim. 201, 203, 63 P. 2d 772, 773 (1936) (“filed an oral demurrer”); Morrison v. Lewis, 58 Ga. App. 677, 199 S. E. 782 (1938) (“filed an oral motion” demurring); Brock v. Cullum Bros., 263 S. W. 335 (Tex. Civ. App. 1924) (“filed an oral motion to quash”); Fike v. Allen, 269 S. W. 179, 180 (Tex. Civ. App. 1925) (“filed oral pleadings”).
Filings may more often be made in writing. See, e.g., Ritter v. United States, 28 F. 2d 265, 267 (CA3 1928) (finding words “file a claim'for refund” to require a written request in context of Tax Code). But we are interested in the filing of “any complaint.” So even if the word “filéd,” considered alone, might suggest a narrow interpretation limited to writ *10 ings, the phrase “any complaint” suggests a broad interpretation that would include an oral complaint. See, e. g., Republic of Iraq v. Beaty, 556 U. S. 848, 856 (2009). The upshot is that the three-word phrase, taken by itself, cannot answer the interpretive question.
We can look further to other appearances of the word “filed” in the Act. See MCI Telecommunications Corp. v. American Telephone & Telegraph Co., 512 U. S. 218, 226 (1994) (examining “contextual indications” of the meaning of a term). That word (or a variant) appears in numerous other provisions. But its appearance elsewhere in the Act does not resolve the linguistic question before us. Some of those other provisions (1) involve filed material that, unlike a complaint, is of a kind that is virtually always in writing. See, e. g., 29 U. S. C. §203(Z) (employers must “have on file an unexpired certificate” (emphasis added)); § 210(a) (Secretary must “file in the court the record of the industry committee” (emphasis added)); ibid, (industry committee must “file” its findings and recommendations). Others (2) specifically require a writing, see, e. g., § 214(c)(5)(A) (requiring employee's “consent in writing” to join collective action to be “filed” (emphasis added)); § 216(b) (same). And the remainder (3) leave the oral/written question unresolved — just as does the provision before us. See, e. g., § 210(b) (prohibiting a stay unless movant “file[s] in court an undertaking” (emphasis added)); § 214(c)(5)(A) (employee “may file ... a petition” for review of a special wage rate (emphasis added)).
Looking beyond the Act, we find other statutes that contain antiretaliation provisions. Those statutes, however, use somewhat different language. See, e. g., § 158(a)(4) (protecting an employee who has “filed charges or given testimony”); § 623(d) (protecting those who “opposed any [unlawful] practice” (emphasis added)); 42 U. S. C. §§2000e-3(a), 12203(a) (same); 29 U. S. C. § 2615(a)(2) (similar). See also, e.g., 15 U.S.C. § 2087(a)(1) (2006 ed., Supp. Ill) (“provided ... to the employer . . . information relating to any viola *11 tion” (emphasis added)); § 2651(a) (2006 ed.) (similar); 30 U. S. C. § 815(c)(1) (“filed or made a complaint” (emphasis added)); 42 U. S. C. § 5851(a)(1)(A) (“notified his employer” (emphasis added)); 49 U. S. C. § 42121(a)(1) (“provided . . . information” (emphasis added)); § 60129(a)(1) (same). Some of this language is broader than the phrase before us, but, given the fact that the phrase before us lends itself linguistically to the broader, “oral” interpretation, the use of broader language elsewhere may mean (1) that Congress wanted to limit the scope of the phrase before us to writings, or (2) that Congress did not believe the different phraseology made a significant difference in this respect. The language alone does not tell us whether Congress, if intending to protect orally expressed grievances elsewhere, did or did not intend to leave those oral grievances unprotected here.
The bottom line is that the text, taken alone, cannot provide a conclusive answer to our interpretive question. The phrase “filed any complaint” might, or might not, encompass oral complaints. We must look further.
B
1
Several functional considerations indicate that Congress intended the antiretaliation provision to eover oral, as well as written, “complaint[s].” First, an interpretation that limited the provision’s coverage to written complaints would undermine the Act’s basic objectives. The Act seeks to prohibit “labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.” 29 U. S. C. § 202(a). It does so in part by setting forth substantive wage, hour, and overtime standards. It relies for enforcement of these standards, not upon “continuing detailed federal supervision or inspection of payrolls,” but upon “information and complaints received from employees seeking to vindicate rights claimed to have been denied.” Mitchell v. Robert DeMario *12 Jewelry, Inc., 361 U. S. 288, 292 (1960). And its antiretaliation provision makes this enforcement scheme effective by preventing “fear of economic retaliation” from inducing workers “quietly to accept substandard conditions.” Ibid.
Why would Congress want to limit the enforcement scheme’s effectiveness by inhibiting use of the Act’s complaint procedure by those who would find it 'difficult to reduce their complaints to writing, particularly illiterate, less educated, or overworked workers? President Franklin Roosevelt pointed out at the time that these were the workers most in need of the Act’s help. See Message to Congress, May 24,1937, H. R. Doc. No. 255, 75th Cong, 1st Sess., 4 (seeking a bill to help the poorest of “those who toil in factory”).
In the years prior to the passage of the Act, illiteracy rates were particularly high among the poor. See E. Gordon & E. Gordon, Literacy in America 273 (2003) (one-quarter of World War I conscripts were illiterate); Dept, of Commerce, Bureau of Census, Sixteenth Census of the United States, 1940, Population: The Labor Force (Sample Statistics): Occupational Characteristics 60 (1943) (20.8% of manufacturing laborers in 1940 had less than five years of schooling). Those rates remained high in certain industries for many years after the Act’s passage. In 1948, for example, the National War Labor Board wrote:
“In many plants where there is a high degree of illiteracy, the writing of grievances by employees works a substantial hardship. In other plants where there is considerable dirt and special clothes must be worn, it is often not practicable to write up grievances during work hours.” 1 The Termination Report of the National War Labor Board, p. 122.
To limit the scope of the antiretaliation provision to the filing of written complaints would also take needed flexibility from those charged with the Act’s enforcement. It could *13 prevent Government agencies from using hotlines, interviews, and other oral methods of receiving complaints. And insofar as the antiretaliation provision covers complaints made to employers (a matter we need not decide, see infra, at 16-17), it would discourage the use of desirable informal workplace grievance procedures to secure compliance with the Act. Cf. Burlington Industries, Inc. v. Ellerth, 524 U. S. 742, 764 (1998) (reading Title YII to encourage the development of effective grievance procedures to deter misconduct); D. McPherson, C. Gates, & K. Rogers, Resolving Grievances: A Practical Approach 38-40 (1983) (describing the significant benefits of unwritten complaints).
Given the need for effective enforcement of the National Labor Relations Act (NLRA), this Court has broadly interpreted the language of the NLRA’s antiretaliation provision — “filed charges or given testimony,” 29 U. S. C. § 158(a)(4) — as protecting workers who neither filed charges nor were “called formally to testify” but simply “participate[d] in a [National Labor Relations] Board investigation.” NLRB v. Scrivener, 405 U. S. 117, 123 (1972) (emphasis added). The similar enforcement needs of this related statute argue for an interpretation of the word “complaint” that would provide “broad rather than narrow protection to the employee,” id., at 122 (and would do so here without pressing statutory language to its limit). See also Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U. S. 590, 597 (1944) (the Act’s “remedial and humanitarian . . . purpose” cautions against “narrow, grudging” interpretations of its language).
Saint-Gobain replies that worker protection is not the only relevant statutory objective. The Act also seeks to establish an enforcement system that is fair to employers. To do so, the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation. If oral complaints suffice, Saint-Gobain adds, employers too often will be left in a state of uncer *14 tainty about whether an employee (particularly an employee who seems unusually angry at the moment) is in fact making a complaint about an Act violation or just letting off steam.
We agree with Saint-Gobain that the statute requires fair notice. Although the dictionary definitions, statutes, regulations, and judicial opinions we considered, see supra, at 7-10, do not distinguish between writings and oral statements, they do suggest that a “filing” is a serious occasion, rather than a triviality. As such, the phrase “filed any complaint” contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.
Moreover, the statute prohibits employers from discriminating against an employee “because such employee has filed any complaint.” §215(a)(3) (emphasis added). And it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate because of that complaint. But we also believe that a fair notice requirement does not necessarily mean that notice must be in writing.
At oral argument, the Government said that a complaint is “filed” when “a reasonable, objective person would have understood the employee” to have “put the employer on notice that [the] employee is asserting statutory rights under the [Act].” Tr. of Oral Arg. 23, 26. We agree. To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for théir protection. This standard can be met, however, by oral complaints, as well as by written ones.
2
Second, given Congress’ delegation of enforcement powers to federal administrative agencies, we also give a degree of *15 weight to their views about the meaning of this enforcement language. See 29 U. S. C. § 216(c) (vesting enforcement power in Secretary of Labor); Reorganization Plan No. 1 of 1978, 5 U. S. C. App. § 1, p. 664 (transferring to Equal Employment Opportunity Commission (EEOC) enforcement of this antiretaliation provision as part of its Equal Pay Act enforcement responsibilities); Skidmore v. Swift & Co., 323 U. S. 134, 140 (1944) (giving weight to a persuasive articulation of views within an agency’s area of expertise).
The Secretary of Labor has consistently held the view that the words “filed any complaint” cover oral,, as well as written, complaints. The Department of Labor articulated that view in an enforcement action filed many years ago, Goldberg v. Zenger, 43 CCH LC ¶ 31,155, pp. 40,985, 40,986 (D Utah 1961). It has subsequently reaffirmed that view in briefs. See, e. g., Brief for Secretary of Labor as Amicus Curiae Supporting Petition for Rehearing With Suggestion for Rehearing En Banc in Lambert v. Ackerley, No. 96-36017 etc. (CA9), pp. 6-7. And more recently it has acted in accordance with that view by creating a hotline to receive oral complaints, see Dept, of Labor, Compliance Assistance by Law— The Fair Labor Standards Act (FLSA), http://www.dol.gov/ compliance/laws/comp-flsa.htm (as visited Mar. 18, 2011, and available in Clerk of Court’s case file) (directing participants who wish to “file a complaint” to contact a local office “or call the Department’s Toll-Free Wage and Hour Help Line at 1-866-4-U S-WAGE ”).
The EEOC has set forth a similar view in its Compliance Manual, Vol. 2, § 8-II(B)(l), p. 8-3, and n. 12 (1998), and in multiple briefs, see, e. g., Brief for EEOC as Amicus Curiae in Support of Petition for Rehearing With Suggestion for Rehearing En Banc in Lambert v. Ackerley, No. 96-36017 etc. (CA9), pp. 8-13; Brief for Appellee in EEOC v. White & Son Enterprises, Inc., No. 88-7658 (CA11), pp. 29-30.
These agency views are reasonable. They are consistent with the Act. The length of time the agencies have held *16 them suggests that they reflect careful consideration, not “post hoc rationalization].” Motor Vehicle Mfrs. Assn, of United States, Inc. v. State Farm Mut. Automobile Ins. Co., 463 U. S. 29, 50 (1983). And they consequently add force to our conclusion. Skidmore, supra, at 140; cf. United States v. Mead Corp., 533 U. S. 218, 229, 234-235 (2001) (Court sometimes finds judicial deference intended even in absence of rulemaking authority); Babbitt v. Sweet Home Chapter, Communities for Great Ore., 515 U. S. 687, 703-704, and n. 18 (1995) (agency views, where the law counsels deference, can clarify otherwise ambiguous statutory provisions).
3
Finally, we note that Saint-Gobain invokes the “rule of lenity” in support of its “written complaint” interpretation. That rule applies primarily to the interpretation of criminal statutes. It leads us to favor a more lenient interpretation of a criminal statute “when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.” United States v. Shabani, 513 U. S. 10, 17 (1994). We agree with Saint-Gobain that those who violate the anti-retaliation provision before us are subject to criminal sanction, 29 U. S. C. § 216(a). And we have said that the rule of lenity can apply when a statute with criminal sanctions is applied in a noncriminal context. See Leocal v. Ashcroft, 543 U. S. 1, 11, n. 8 (2004). But after engaging in traditional methods of statutory interpretation, we cannot find that the statute remains sufficiently ambiguous to warrant application of the rule of lenity here.
C
Alternatively, Saint-Gobain claims that it should prevail because Kasten complained to a private employer, not to the Government; and, in Saint-Gobain’s view, the antiretaliation provision applies only to complaints filed with the Government. Saint-Gobain advanced this claim in the lower courts, *17 which held to the contrary. 570 F. 3d, at 837-838; 619 F. Supp. 2d, at 613. But Saint-Gobain said nothing about it in response to Kasten’s petition for certiorari. Indeed, it did not mention the claim in this Court until it filed its brief on the merits.
We do not normally consider a separate legal question not raised in the certiorari briefs. See this Court’s Rule 15.2; Caterpillar Inc. v. Lewis, 519 U. S. 61, 75, n. 13 (1996). We see no reason to make an exception here. Resolution of the Government/private employer question is not a “ ‘ “predicate to an intelligent resolution”’” of the oral/written question that we granted certiorari to decide. See ibid, (quoting Ohio v. Robinette, 519 U. S. 33, 38 (1996)). That is to say, we can decide the oral/written question separately — on its own. And we have done so. Thus, we state no view on the merits of Saint-Gobain’s alternative claim. Cf. post, at 18-21 (Scalia, J., dissenting).
* * *
We conclude that the Seventh Circuit erred in determining that oral complaints cannot fall within the scope of the phrase “filed any complaint” in the Act’s antiretaliation provision. We leave it to the lower courts to decide whether Kasten will be able to satisfy the Act’s notice requirement. We vacate the Circuit’s judgment and remand the case for further proceedings consistent with this opinion.

It is so ordered.

Justice Kagan took no part in the consideration or decision of this case.