NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 5, 2012[*]
Decided December 14, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1075

| | |
|---|---|
| MARILYN WALTON,<br>　　　*Plaintiff-Appellant,*<br><br>　　　*v.*<br><br>UNITED STATES STEEL<br>CORPORATION,<br>　　　*Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of Indiana,<br>Hammond Division.<br><br>No. 2:07-CV-331<br><br>Andrew P. Rodovich,<br>*Magistrate Judge.* |

**O R D E R**

Marilyn Walton sued her former employer, United States Steel Corporation, claiming racial discrimination and retaliatory discharge. Only the latter claim survived summary judgment, and after a two-day trial the district court granted the defendant's motion for judgment as a matter of law. Walton appeals, but because she has not provided

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

a transcript of the district court proceedings, and because we can perceive no error in the record as it stands, we affirm the judgment of the district court.

We have pieced together Walton's factual allegations as best we can from the available record, including the pleadings and her deposition testimony. Walton was hired into an entry-level position at U.S. Steel in August 2004. She was assigned to the coke plant at the company's mill in Gary, Indiana, and agreed to remain in that position for six years before seeking a transfer to another part of the plant. During her tenure at U.S. Steel, Walton complained orally to coworkers and managers about perceived disparities between conditions in the mill's east side, where raw materials are processed and the coke plant is located, and the west side, which handles finishing. She asserted that most of the women working in the east side are black while those in the west side are white. She also pointed out that the west side of the mill is cleaner, has a cafeteria for employees, and has positions offering higher incentive pay. Walton complained, too, that workers were sometimes locked inside the coke plant until the end of their shifts and were not paid for the time they spend changing clothes and showering after their shifts.

Walton also was involved in several disagreements with her coworkers. At her deposition she testified that her first manager one time almost backed over her with a machine, another time inconvenienced her by blocking her path with a machine, and a third time sent her home early with the explanation that she was tired of looking at her. Walton complained and was assigned to a different crew supervised by Raul Arana, but she had problems with him as well. Arana, she said, once left her standing on a train track in the dark without a safety device that would prevent another train from coming down the track. Other times he allowed coworkers to insult her and excluded her from after-work social gatherings. Arana also denied her the opportunity to train for a new position.

Stress from these workplace aggravations allegedly caused Walton to call in sick, and in June 2006 her doctor said she was unable to work her assigned job and recommended that she transfer to another area of the mill. Her union began negotiating a transfer with management but abandoned the effort when Walton was medically cleared to resume working at the coke plant in July 2006. After returning Walton was assigned to a different area within the plant. But she soon filed a union grievance complaining that the company arbitrarily had denied her request to be relocated away from the coke plant.

Walton again took medical leave in September 2006. While away from her job she sent U.S. Steel a letter asserting that she had experienced racial discrimination at the coke plant, and in November she filed a charge of discrimination with the Equal Employment Opportunity Commission. In support Walton alleged that a coworker had called her a "crazy bitch," and that another coworker had intimidated her by jokingly brandishing a

knife at a third employee. She complained, too, that she had been denied training in favor of another woman with less seniority (who like Walton is black), that white women at U.S. Steel held better-paying jobs than black women, and that during a meeting the previous March she had been forced to defend herself against unspecified "bogus allegations." (Walton apparently was referring to an incident in which a coworker had accused her of sexual harassment for suggesting that the coworker have sex with their supervisor.) Although acknowledging that no one had made racist comments to her, Walton insisted that management's purported inattentiveness to her problems at work was racially motivated. The EEOC did not substantiate Walton's claim of discrimination and issued a right-to-sue letter in June 2007.

Meanwhile, with the EEOC's investigation still pending, Walton returned to work in December 2006. But after just a few weeks she was suspended for using profanity and racial slurs during an altercation with another black employee, Marcel Simpson. Management investigated and interviewed Simpson and five witnesses. Four of those witnesses stated that Walton had used racist and abusive language and recalled her branding Simpson a "coward," "punk," "nigger," "motherfucking nigger," and "ignorant nigger." Walton conceded that she had said "nigger" but explained that she simply was discussing the meaning of the word and had not used it as an epithet. U.S. Steel rejected that explanation and fired Walton in January 2007. The company explained that she had violated its prohibition against discriminatory harassment by using a racial slur toward a coworker. Walton filed a union grievance challenging her discharge, but eventually an arbitration board concluded that her testimony was not credible and that she indeed had violated the antiharassment policy by using racially charged language that was intended to belittle or show hostility to her coworker.

Walton then filed a second charge with the EEOC, this time claiming that she had been fired in retaliation for submitting the earlier charge of discrimination. After investigating, the EEOC concluded that the reason given for discharging Walton had not been pretextual. Walton then filed this suit claiming that she had been assigned to a job with lower earning potential and harassed on account of her race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-2(a)(1). She also claimed retaliatory discharge in violation of Title VII, *see* 42 U.S.C. § 2000e-3(a), and the Fair Labor Standards Act, *see* 29 U.S.C. § 215(a)(3). The FLSA claim was premised on Walton's EEOC charge alleging racial discrimination and on her oral complaints to management about not being paid for time spent showering or changing into protective gear.

The district court (through a magistrate judge sitting by consent) granted summary judgment for U.S. Steel on all but the Title VII claim for retaliatory discharge. Walton's

claims of racial discrimination failed, the court concluded, because she lacked evidence suggesting racial hostility as the impetus for the alleged harassment. Nor did she introduce evidence establishing that her assignment to the coke plant was an adverse employment action or that she was treated less favorably than similarly situated employees of other races. Walton's claim of retaliation under the FLSA also failed, according to the district court, because her EEOC charge did not include complaints about wages or hours, and her oral complaints had not been "filed" and thus could not support a retaliation claim under the statute.

As for the claim that survived, Walton had opposed summary judgment by asserting that other employees frequently said "nigger" without being fired. The word is actually a term of endearment when said by blacks, Walton insisted, and when using it during the argument with Simpson she had been telling him why, in her view, workers in the coke plant should stop using the word. The district court reasoned that this evidence, if believed, could raise an inference of retaliatory motive when coupled with the short amount of time between Walton's submission of her first EEOC charge in November 2006 and her discharge the following January. At trial, however, the district court granted judgment as a matter of law for U.S. Steel, *see* FED. R. CIV. P. 50(a), reasoning that Walton had not offered evidence contradicting management employees who testified that she was fired for violating the company's antiharassment and antidiscrimination policies.

Walton's brief in this court is sparse and likely fails to satisfy Federal Rule of Appellate Procedure 28(a)(9), which requires that an appellant's brief include an argument. *See Correa v. White*, 518 F.3d 516, 517 (7th Cir. 2008); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). We surmise that Walton principally challenges the district court's belief that her evidence was too thin to give the jury, but we cannot begin to assess that contention because Walton has not supplied a transcript of the two-day trial. Walton was denied leave to appeal in forma pauperis by the district court and then by us, and the district court also refused to provide Walton a free transcript of the trial. And yet Walton did not obtain a trial transcript on her own; instead, all she has provided is a transcript of the judge's decision on the Rule 50(a) motion, leaving us in the dark about the trial evidence and unable to determine whether it was enough to sustain a verdict in Walton's favor. This alone would be reason enough to dismiss the appeal. *See* FED. R. APP. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."); *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 743–44 (7th Cir. 2011) (noting that plaintiff forfeited evidentiary challenge by failing to provide transcript of oral arguments or district court's bench ruling on motion in limine); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003)

(declining to evaluate district court's exclusion of expert testimony where plaintiff did not request that transcript of *Daubert* hearing be included in record on appeal); *LaFollette v. Savage*, 63 F.3d 540, 544–45 (7th Cir. 1995) (dismissing appeal of jury verdict as against weight of evidence where plaintiff failed to include complete trial transcript in record on appeal); *Woods v. Thieret*, 5 F.3d 244, 245 (7th Cir. 1993) (same).

Walton also suggests that the district court erred in granting summary judgment on her claim under the Fair Labor Standards Act and calls our attention to the Supreme Court's subsequent decision in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), holding that the Act protects employees from retaliation based on oral as well as written complaints. *Id*. at 1336. Walton, however, waived this argument by failing to raise it in response to summary judgment. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Moreover, had this claim survived summary judgment, it would have failed for the same reason as Walton's Title VII claim: Walton identified no evidence suggesting that U.S. Steel's stated reason for firing her was pretextual. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 810–11 (7th Cir. 2005).

We have evaluated Walton's remaining contentions and conclude that none has merit. Accordingly, the judgment is AFFIRMED.