[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10344
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-20615-JJO


YENISEY PEREZ,
CINTIA CINI,
and all others similarly situated under
29 U.S.C. 216(b),

                                        Plaintiffs - Appellants,

versus

ANASTASIA M. GARCIA, P.A.,
ANASTASIA M. GARCIA,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2017)

Before HULL, WILSON, and DUBINA Circuit Judges.

PER CURIAM:

Appellants Yenisey Perez ("Perez") and Cintia Cini ("Cini") brought retaliation claims under the Fair Labor Standards Act ("FLSA") against Appellees Anastasia M. Garcia P.A. and Anastasia Garcia (collectively "Garcia"), arguing that they were constructively discharged because they complained about not receiving overtime pay. The district court[1] granted summary judgment in favor of Garcia holding that Perez and Cini failed to produce record evidence demonstrating an adverse employment action, or causation between the adverse employment action and Perez and Cini's protected activities. After reviewing the record, and reading the parties' briefs, we affirm the grant of summary judgment in favor of Garcia.

## I.    BACKGROUND

Garcia owns and operates a law firm in Miami, Florida. Perez worked as a secretary at the firm for approximately five years. Cini worked as a secretary at the firm for approximately one year. According to Perez and Cini working for Garcia was turbulent. Perez testified that Garcia "was always going on different rampages," "was an exaggerated person … very aggressive … her mood swings would switch," and that Perez "was always afraid to complain to her" because of

---

[1] The parties consented to a magistrate judge conducting all proceedings in this case; *see also* 28 U.S.C. § 636 et. seq.

Garcia's demeanor.  The use of expletives and bad language was commonplace.

Cini testified that Garcia was "crazy" and "a very bipolar person."

On February 4, 2015, Garcia sent two emails to her associate Frank

Pumarejo ("Pumarejo").  The first email stated:

> [G]reat.  I am done.  I am talking to both of them tomorrow and if they don't f\*\*cking like it, they can f\*\*cking leave.  I am just warning you.  This is f\*\*cking bull s\*\*t.  I'm tired of working this hard with laziness around me.  I don't trust anyting [sic] I told either one them today got done correctly.  Cintia, at least tries to correct her mistakes.  I feel like yenny [sic] is daring me to fire her and she may get her wish.  But, I will detail all the reasons why because I am not paying unemployment for her either.  I'm sick of this f\*\*cking s\*\*t.  I have been here before, several times.

The second email stated:

> [A]side from the long office email neither responded to, I sent 5 emails to yenny [sic] and 3 to cintia [sic] and not one response, despite me asking during the day.  The level of disrespect I feel in this office is making me sick.  They are both gone tomorrow.  But I need to find someone to answer the phone. . . .  I am going to fire them both after the bills are done.  My cousin's partner has a [sic] employment staffing agency.  I am going to talk to him.  This is f\*\*cked up with the upcoming move, but I can't take this.  I printed all of the emails out and this was the straw that broke the camels [sic] back.
>
> I have called yenny [sic] three times after she left and she doesn't bother answering.  I use to put up with her s\*\*t because I considered that she answers if I call her after hours and all that s\*\*t, but now she doesn't pick up the f\*\*cking phone.  To stay on the cell phone today, in my face, as if I am some f\*\*cking idiot just went too f\*\*cking far.
>
> I'm sorry because it will affect you for a few days, but I will find someone.  I have to change all of my passwords and all that s\*\*t, but I will do that in the next couple of days.

3

Both Perez and Cini had access to Garcia's email, and Perez testified that she read both of these emails.

On February 5, 2015, Perez sent an email to Garcia stating: "During the five years of employment for you I have worked many hours of overtime. I kindly request to be compensated for such hours." Perez claims she had complained to Garcia about overtime prior to the February 5th email; however, the record shows that Perez had only told Garcia she could no longer work past 5:40PM due to childcare issues.

On February 9, 2015, Garcia received an email stating that Perez and Cini had obtained counsel to recover overtime pay pursuant to the FLSA. On February 13, 2015, both Perez and Cini resigned. Between February 9th and February 13th, Perez attended work for five days, Cini attended work for two. During this time period Perez and Cini testified that Garcia became "overtly" hostile to them, called them derogatory names, changed the office locks, restricted cellular access to emails, password protected the office computers so that Perez and Cini would have to request access from Pumarejo, positioned temporary employees to monitor Perez and Cini's work, and sent negative employment references to other attorneys.

Subsequently, Perez and Cini brought suit against Garcia alleging overtime wage violations and retaliation under the FLSA. The district court bifurcated the

4

trial–allowing the overtime wage violation claim to proceed to trial.  The retaliation claim was disposed of on summary judgment.  Believing they were entitled to a jury trial on the retaliation claim, Perez and Cini perfected this appeal.  At issue is whether the district court properly granted Garcia's motion for summary judgment.

## II.    STANDARD OF REVIEW

We review an order granting summary judgment de novo.  *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1339 (11th Cir. 2000).  "We will affirm the summary judgment for the moving party if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact."  *Id.* at 1339-40.

## III.    ANALYSIS

To successfully put forth a prima facie case of retaliation under the FLSA a plaintiff must demonstrate (1) she engaged in statutorily protected activity; (2) she subsequently suffered an adverse employment action; and (3) there is a causal connection between the employee's protected activity and the adverse action.  *See Wolf*, 200 F.3d at 1342-43.  "In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  *Id.* at 1343.

To begin with, the FLSA does not require "good" behavior on the part of an employer. Additionally, federal law does not guarantee employees a stress-free working environment. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233–34 (11th Cir. 2001). "We are not a 'super-personnel department' assessing the prudence of routine employment decisions, 'no matter how medieval,' 'high-handed,' or 'mistaken.' " *Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1337–38 (11th Cir. 2015), cert. denied sub nom., Flowers v. Troup Cty., Georgia, Sch. Dist., 136 S. Ct. 2510 (2016)* (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir.2010)). Indeed, as we have held in similar contexts, "employers may terminate an employee for a good or bad reason without violating federal law." *Id.* at 1338 (quotation omitted). Thus, to succeed plaintiffs must demonstrate that they suffered an adverse employment action because they engaged in activity protected under the FLSA.

Here, it is undisputed that Perez's February 5th email requesting overtime, and Perez and Cini's Feburary 9th email regarding their obtaining counsel to pursue overtime claims constitutes protected activity under the FLSA. Perez argues that she engaged in protected activity prior to February 5th when she told Garcia she could no longer work past 5:40PM; however, as the district court correctly found, such conversations–particularly because they centered on childcare concerns–were not enough to put Garcia on notice that Perez was making

6

an overtime complaint. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 1334 (2011) ("[T]he phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.").

Furthermore, it is dubious that Perez and Cini were subject to adverse employment actions. Here, Perez and Cini claim they were constructively discharged in retaliation for the filing of the FLSA complaint. However, "[b]efore finding a constructive discharge, this court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of intolerable." *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (quotation omitted).

As the district court aptly noted, it is questionable that such pervasive conduct could occur in the short period of time between the protected activity and Perez and Cini's resignations. *See Hipp*, 252 F.3d at 1231. Moreover, there is little evidence Perez and Cini suffered harm from Garcia's alleged conduct. However, we need not reach this issue because Perez and Cini cannot demonstrate causation between their protected activity and the alleged adverse actions they suffered.

As discussed, there must be 'but for' causation between the suffered adverse employment action and the protected activity.  Here, Garcia's February 4, 2015, emails–sent one day before Perez engaged in protected activity–contemplates engaging in precisely the conduct Perez and Cini now claim is retaliatory. Specifically, Garcia stated she no longer trusted Perez and Cini, and that she needed to change the passwords.  Garcia's decisions to change the office locks, restrict access to email, password protect the computers, and hire temporary assistants to monitor Perez and Cini are consistent with the February 4th emails. Additionally, Perez and Cini both testified that, throughout their employment, Garcia was often hostile or acted "crazy," and frequently used expletives.  Garcia's use of derogatory language, screaming, cursing, and alleged violence after receiving notice of Perez and Cini's intention to seek overtime pay is merely a continuation of her behavior prior to the protected activity.  In short, because "at minimum [a plaintiff] must show that the adverse act followed the protected conduct," *see Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir.1999), Perez and Cini cannot show causation and therefore their retaliation claims fail.

## IV.   CONCLUSION

Based on the foregoing discussion, we affirm the district court's order granting summary judgment in favor of Garcia.

**AFFIRMED.**