**Sonoku TAGAMI, Plaintiff–Appellant,**

**v.**

**CITY OF CHICAGO, et al.,**
**Defendants–Appellees.**

**No. 16-1441**

United States Court of Appeals, Seventh Circuit.

Argued November 1, 2016

Decided November 8, 2017

Amended December 11, 2017

Rehearing and Rehearing En Banc Denied December 11, 2017

Kenneth N. Flaxman, Attorney, Joel A. Flaxman, Attorney, Law Office of Kenneth N. Flaxman P.C., Chicago, IL, for Plaintiff–Appellant.

Jonathon D. Byrer, Attorney, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants–Appellees.

Before EASTERBROOK, ROVNER, and SYKES, Circuit Judges.

SYKES, Circuit Judge.

Sonoku Tagami celebrated "GoTopless Day 2014" by walking around the streets of Chicago naked from the waist up, though wearing "opaque" body paint on her bare breasts. She was cited for violating a Chicago ordinance prohibiting public nudity. She responded with this lawsuit alleging that the ordinance is unconstitutional. She contends that banning women from exposing their breasts in public violates the First Amendment's guarantee of freedom of speech and amounts to an impermissible sex-based classification in violation of the Fourteenth Amendment's Equal Protection Clause. The district court dismissed the suit and we affirm.

## I. Background

Tagami supports GoTopless, Inc., a nonprofit organization that advocates for a woman's right to bare her breasts in public. On August 24, 2014, she participated in the group's annual "GoTopless Day" by walking about the City of Chicago unclothed from the waist up. Before doing so, she applied "opaque" body paint to her bare breasts. That did not suffice to avoid the predictable citation for public indecency. A police officer ticketed her for violating the city's public-nudity ordinance, which states that

[a]ny person who shall appear, bathe, sunbathe, walk or be in any public park, playground, beach or the waters adjacent thereto, or any school facility and the area adjacent thereto, or any municipal building and the areas adjacent thereto, or any public way within the City of Chicago in such a manner that the genitals, vulva, pubis, pubic hair, buttocks, perineum, anus, anal region, or pubic hair region of any person, *or any*

*portion of the breast at or below the upper edge of the areola thereof of any female person, is exposed to public view or is not covered by an opaque covering,* shall be fined not less than $100.00 nor more than $500.00 for each offense.

CHICAGO, ILL., CODE § 8–8–080 (emphasis added).

Tagami contested the citation before a hearing officer but was found guilty of violating the public-nudity ordinance and ordered to pay a $100 fine plus $50 in administrative costs. Tagami then sued the City alleging that the ordinance is facially unconstitutional. As relevant here, she claims that the ordinance violates the First Amendment's guarantee of freedom of speech and discriminates on the basis of sex in violation of the Fourteenth Amendment's Equal Protection Clause.

The City moved to dismiss the original complaint for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The district judge dismissed the equal-protection claim but allowed the First Amendment claim to proceed. Tagami then amended her complaint, reasserting both claims. The City again moved to dismiss, and the judge again dismissed the equal-protection claim. As for the repleaded First Amendment claim, the judge treated the City's motion as a request for reconsideration and reversed her previous ruling, dismissing that claim as well. Final judgment for the City followed and Tagami appealed.

## II. Discussion

■ We review the judge's dismissal order de novo, accepting Tagami's factual allegations as true and drawing reasonable inferences in her favor. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

■ Taking the First Amendment claim first, we begin with an obvious point:

Chicago's public-nudity ordinance regulates conduct, not speech. Some forms of expressive conduct get First Amendment protection, but this principle extends only to conduct that is *"inherently* expressive." *Rumsfeld v. Forum for Acad. & Inst'al Rights, Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006) (emphasis added). To fall within the scope of this doctrine, the conduct in question must comprehensively communicate its own message without additional speech. *Id.* Put slightly differently, the conduct *itself* must convey a message that can be readily "understood by those who view[ ] it." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 411, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)). This limiting principle is necessary lest "an apparently limitless variety of conduct be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

 "Being in a state of nudity is not an inherently expressive condition." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (internal quotation marks omitted). Tagami nevertheless contends that her public nudity, viewed in context, warrants First Amendment protection as expressive conduct. She alleged in her amended complaint that she bared her breasts in public places around Chicago as part of GoTopless Day, an event intended to "protest ... laws that prevent[ ] women from appearing bare-chested in public," which the group and its supporters consider archaic. Whatever her subjective intent, Tagami's public nudity did not *itself* communicate a message of political protest. Indeed, her amended complaint drives this point home by alleging that she appeared topless in public

"while expressing [her] views that women, like men, should not be prohibited from appearing bare-chested in public." The presence of additional explanatory speech "is strong evidence that the conduct ... is not so inherently expressive that it warrants [First Amendment] protection." *Rumsfeld*, 547 U.S. at 66, 126 S.Ct. 1297.

Nor does the amended complaint offer any facts from which it might reasonably be inferred that onlookers would have readily understood that this public display of nudity was actually a political protest against the City's public-indecency ordinance. On this point the allegations here are not remotely analogous to the circumstances at issue in *Johnson*, the flag-burning case. There the Court held that "[t]he expressive, overtly political nature of th[e] conduct was both intentional and overwhelmingly apparent." *Johnson*, 491 U.S. at 406, 109 S.Ct. 2533. It is not "overwhelmingly apparent" that a woman's act of baring her breasts in public expresses a political message.

 Even if we assume for the sake of argument that Tagami's nudity was communicative enough to warrant some degree of First Amendment protection, the district judge was right to dismiss this claim. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376, 88 S.Ct. 1673. Under the *O'Brien* test, a law survives First Amendment scrutiny if

(1) the regulation is within the constitutional power of the government; (2) the regulation furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the restriction on alleged First

Amendment freedoms is no greater than essential to further the government's interest.

*Foxxxy Ladyz Adult World, Inc. v. Village of Dix*, 779 F.3d 706, 712 (7th Cir. 2015) (describing *O'Brien*'s intermediate standard of scrutiny).

Tagami limits her argument to the second step of the *O'Brien* framework, challenging only the City's justification for banning public nudity. To defend the ordinance against this facial challenge, the City invokes its general interest in preserving health, safety, and traditional moral norms. More particularly, the City argues that the ordinance protects unwilling members of the public—especially children—from unwanted exposure to nudity.

Tagami insists that the City must produce *evidence* to support its justification for this law, so dismissal at the pleadings stage was improper. More specifically, she argues that the City has the burden to show, with evidence, that the ordinance is justified as a means to prevent the harmful secondary effects of public displays of nudity.

Not so—at least not in this context.[1] The Supreme Court has upheld a similar public-nudity ban under the *O'Brien* test based on history and tradition, without requiring an evidentiary showing. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 568–69, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Here's the key part of the Court's reasoning:

> [T]he statute's purpose of protecting societal order and morality is clear from its text and history. Public indecency statutes of this sort are of ancient origin and presently exist in at least 47 States. Public indecency, including nudity, was a criminal offense at common law.... Public nudity was considered an act *malum in se*. Public indecency statutes ... reflect moral disapproval of people appearing in the nude among strangers in public places.
>
> . . . . .
>
> This and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation.

*Id.* (citation omitted). Put more succinctly, the interest at stake here "is societal disapproval of nudity in public places and among strangers," *id.* at 572, 111 S.Ct. 2456, so the prohibition "is not a means to some greater end, but an end in itself," *id.*

Chicago's ordinance has a similar pedigree. It has existed in one form or another for decades. Like other laws of this type, its essential purposes—promoting traditional moral norms and public order—are both self-evident and important enough to survive scrutiny under the *O'Brien* test. *Id.* at 569, 111 S.Ct. 2456.

Moving now to the equal-protection claim, the City advances a threshold argument that its public-nudity ordinance does not actually classify by sex, so the Equal Protection Clause is not implicated at all. As the City sees it, the ordinance treats

---

1. Local governments sometimes point to the harmful secondary effects of exotic-dancing clubs to defend enforcement of public-nudity laws in that context. *See, e.g., Foxxxy Ladyz Adult World, Inc. v. Village of Dix*, 779 F.3d 706 (7th Cir. 2015); *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460 (7th Cir. 2009). That justification, we've held, requires some evidentiary support. *See Foxxxy Ladyz*, 779 F.3d at 716. Chicago does not need a secondary-effects justification to defend this ordinance. As we explain in the text, *Barnes* suffices to defeat this facial challenge. The "secondary effects" line of cases is inapposite here.

men and women alike by equally prohibiting the public exposure of the male and female body parts that are conventionally considered to be intimate, erogenous, and private. The list of intimate body parts is longer for women than men, but that's wholly attributable to the basic physiological differences between the sexes.

This strikes us as a justification for this classification rather than an argument that no sex-based classification is at work here at all. On its face, the ordinance plainly *does* impose different rules for women and men. It prohibits public exposure of "the breast at or below the upper edge of the areola thereof *of any female person.*" CHI-CAGO, ILL., CODE § 8–8–080 (emphasis added).

■■■■■ Still, a law that classifies on the basis of sex is compatible with the Equal Protection Clause if the classification serves important governmental objectives and the "discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (quotation marks omitted). This intermediate level of judicial scrutiny recognizes that sex "has never been rejected as an impermissible classification in all instances." *Rostker v. Goldberg*, 453 U.S. 57, 69 n.7, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (quotation marks omitted). "Physical differences between men and women . . . are enduring: [T]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both." *Virginia*, 518 U.S. at 533, 116 S.Ct. 2264 (alterations in original) (quotation marks omitted).

The intermediate-scrutiny test for sex-based legal classifications is not meaningfully different than the *O'Brien* test for laws that burden expressive conduct. As we've just explained, Chicago's public-nu-

dity ordinance easily survives review under *O'Brien*. Because the tests are materially identical, it follows that the City's ordinance withstands equal-protection challenge.

AFFIRMED.

ROVNER, Circuit Judge, dissenting.

As in many First Amendment cases, the speech at issue here is that which offends many, makes many others uncomfortable, and may seem trivial and unimportant to most. The First Amendment protects not just the speech which a majority of people find persuasive and worthwhile, but to the contrary, its protections are most essential when the speech is that with which most take offense. See, e.g., *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). This is the caveat that must be emphasized beyond all else in this case.

A court may not dismiss a case on the pleadings unless it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004). We must always be mindful that when we dismiss a case on the pleadings, we deprive the parties of their day in court to marshal evidence to make the most persuasive argument for their rights. And when presented with a free speech claim, we must take care not to allow our own personal assessment of the worth of the speech to dictate whether the claim should be dismissed. In dismissing this case on the pleadings, the majority has declared that there is no set of facts under which Sonoku Tagami's participation in an annual "Go Topless Day" protest—an event sponsored by a 501(c)(3) group advocating for gender equality in indecency ordinances—could be viewed as expressive

conduct. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). This, the majority says, is because Tagami's nudity is conduct rather than expressive speech. To support this contention, the majority relies on the fact that Tagami accompanied the baring of her breasts with additional explanatory speech—that is, she and her group explained their conduct, passed out fliers and otherwise voiced the purpose of their protest. According to the majority, the fact that Tagami appeared topless while also expressing her views about nudity "is strong evidence that the conduct ... is not so inherently expressive that it warrants [First Amendment] protection." Majority at 378, citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). Conduct is sufficiently expressive when the intent of it is to convey a particularized message and the likelihood is great that those who view the conduct will understand the message. *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In *Rumsfeld*, the Court held that the act of barring military recruiters from using campus facilities to conduct law school interviews in protest of the military's anti-gay policies was not inherently expressive because the casual observer would not understand what message the ban was conveying without an accompanying explanation *Id.* And it is true in that fact scenario that the casual observer could not possibly know why the recruiters had been barred, or even that they had been barred, absent some explanation.

The majority nakedly declares that "Tagami's public nudity did not *itself* communicate a message of political protest," but rather required accompanying explanation. But the fact that Tagami included some explanation with her conduct does not necessitate a finding that her message would not have been understood otherwise. Accompanying explanations do not turn expressive conduct into non-expressive conduct. Otherwise wearing a black armband would constitute expressive conduct, but wearing an armband and shouting "No more war!" would not. See *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Nor can one evaluate the expressive content of public nudity divorced from the context in which it occurs. It is akin to taking a picture of a recent women's march protest and enlarging it again and again to isolate a single marcher wearing a pink hat and concluding from the picture of a single hat-wearing marcher alone that the conduct is not expressive because the wearing of a hat "d[oes] not *itself* communicate a message of political protest." See Majority at 378.

There could not be a clearer example of conduct as speech than the one here. Tagami was not sunbathing topless to even her tan lines, swinging topless on a light post to earn money, streaking across a football field to appear on television, or even nursing a baby (conduct that is exempted from the reach of the ordinance). Her conduct had but one purpose—to engage in a political protest challenging the City's ordinance on indecent exposure. Tagami engaged in the paradigm of First Amendment speech—a public protest on public land in which the participants sought to change a law that, on its face, treats women differently than men. It is difficult to imagine conduct more directly linked to the message than that in which Tagami engaged. The ordinance prohibits bare (female) breasts; Tagami bared her breasts in protest. (To be more precise, Tagami apparently intended to comply with, but push the limits of the ordinance by painting her breasts with opaque paint.) The baring of breasts uniquely conveyed the intensity of the expression of

protest and also the degree of commitment of the protestor. We are a society that expresses itself with displays on our bodies ranging from messaged t-shirts and hats, provocative clothing, tattoos, arm bands, and lapel pins. Perhaps this is why so many of our seminal free expression cases involve protected expressive conduct of clothing or the absence of it. See, e.g., *Tinker*, 393 U.S. 503, 89 S.Ct. 733 (arm bands to protest the war); *Cohen v. California*, 403 U.S. 15, 16, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (a jacket bearing the words "F#\*k the Draft"); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (nude dancing is expressive conduct); *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 676 (7th Cir. 2008) (student protesting gay rights day with shirt bearing the slogan "Be Happy, Not Gay"). See also, *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) ("For that matter, parading in public wearing no clothing at all can, depending on the circumstances, convey a political message."). Public nudity may not always be "*inherently* expressive," See *City of Erie*, 529 U.S. at 299, 120 S.Ct. 1382, (and I can think of many situations in which it would not be), but to declare, as a matter of law, that it can *never* be expressive is the quintessence of throwing out the free-expression baby with the non-expressive-conduct bath water.

Although Tagami's conduct clearly was expressive, the City might still have a legitimate reason for prohibiting it. The majority concludes that the purpose of "promoting traditional moral norms and public order—are both self-evident and important enough to survive scrutiny under the *O'Brien* test." Majority at 379. It is true that in our society female breasts have been sexualized as objects of desire while the breasts of men have not. There is no biological basis for this distinction. The primary functional difference between the female breast and the male breast is not a sexual one, but rather, just the opposite—the fact that the former has the potential to provide milk to sustain a baby, while the latter does not. The City's claim therefore boils down to a desire to perpetuate a stereotype that female breasts are primarily the objects of desire, and male breasts are not. As a district court reasoned in a similar case, we should not "accept the notion . . . that we should continue a stereotypical distinction 'rightly or wrongly,' or that something passes constitutional muster because it has historically been a part of 'our culture.'" *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F.Supp.3d 1126, 1133 (D. Colo. 2017). Had we done so we would not now have women lawyers, women jurors, women estate administrators or women military cadets. *Id.* I cannot say for certain what the ultimate outcome in this case would be after a full airing of the evidence, but to declare that Tagami's conduct cannot be a protected expression of free speech under any circumstances is premature.

Whether Tagami's conduct was sufficiently expressive and whether the City will be able to demonstrate a sufficient justification under *O'Brien* for banning the showing of the female breast below the upper edge of the areola are not matters that can be resolved on a motion to dismiss. And it is that aspect and only that aspect—the prematurity of this decision—from which I dissent.

Nor should Tagami's equal protection claim have been dismissed at the pleading stage. As my colleagues rightly acknowledge, Chicago's ordinance proscribing "indecent exposure or dress" on its face treats men and women differently, making it an offense only for women to bare their breasts in public. That differential treat-

ment must be grounded in an "exceedingly persuasive justification." *Sessions v. Morales–Santana*, —— U.S. ——, 137 S.Ct. 1678, 1690, 198 L.Ed.2d 150 (2017) (quoting *United States v. Virginia*, 518 U.S. 515, 524, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996)). Of course male and female anatomies are different. But, as we noted, the principal respect in which the female breast is different is the role it plays in feeding infants, and yet that is the one purpose for which Chicago *permits* the female breast to be exposed in public. Apart from breastfeeding, it is societal perception rather than form and function that categorically distinguishes the female breast from the male: in our culture, a woman's breast has long been viewed as uniquely sexual and titillating. *See Free the Nipple–Fort Collins*, 237 F.Supp.3d at 1132–33. Any invocation of tradition and moral values in support of a law that facially discriminates among classes of people calls for a healthy dose of skepticism on our part, as historical norms are as likely to reflect longstanding biases as they are reasonable distinctions. *See Morales–Santana*, 137 S.Ct. at 1692–93 (noting that the Court views with suspicion laws that rely on stereotypes concerning men's and women's respective social roles); *Obergefell v. Hodges*, —— U.S. ——, 135 S.Ct. 2584, 2604–05, 192 L.Ed.2d 609 (2015) (noting essential role Equal Protection Clause plays in identifying inequalities previously "unnoticed and unchallenged"); *Lawrence v. Texas*, 539 U.S. 558, 571, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) ("Our obligation is to define the liberty of all, not to mandate our own moral code.") (quoting *Planned Parenthood of SE Penn. v. Casey*, 505 U.S. 833, 850, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); *People v. Santorelli*, 80 N.Y.2d 875, 587 N.Y.S.2d 601, 600 N.E.2d 232, 236 (1992) (Titone, J., concurring) ("where 'public sensibilities' constitute the justification for a gender-based

classification, the fundamental question is whether the particular 'sensibility' to be protected is, in fact, a reflection of archaic prejudice or a manifestation of a legitimate government objective"). Whether out of reverence or fear of female breasts, Chicago's ordinance calls attention to and sexualizes the female form, *see Free the Nipple–Fort Collins*, 237 F.Supp.3d at 1133, and imposes a burden of public modesty on women alone, with ramifications that likely extend beyond the public way. Women, like men, take their bodies with them everywhere, and when the law imposes a different code of dress on women, when it requires them to cover up in a way that men need not, it is quite possible that women will be treated differently—in the workplace, in the public square, on the subway—precisely because they are required to dress differently. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (workplace evaluations based on stereotypes of how women should dress, appear, and comport themselves can constitute sex discrimination violating Title VII of the Civil Rights Act of 1964); *Carroll v. Talman Fed. Sav. & Loan Ass'n of Chicago*, 604 F.2d 1028, 1032–33 (7th Cir. 1979) (workplace dress code requiring women but not men to wear uniforms described as demeaning to women). In any case, it strikes me as open to question whether there exists a broad consensus in support of the notion that a woman appearing bare-chested in public constitutes indecent exposure: only three states (Indiana, Tennessee, and Utah) have statutes clearly treating the exposure of the female breast as indecency, and section 213.5 of the Model Penal Code is limited to public exposure of the genitals (male or female).

Do I relish the prospect of seeing bare-chested women in public? As a private citizen, I surely do not. (I would give the

same answer with respect to bare-chested men.) But I speak here *strictly* as a judge, with the responsibility to accord Tagami her constitutional rights.

The question before us is not whether Tagami should prevail but whether she *might* prevail after a full development of the record. Tagami has presented us with potentially viable First Amendment and sex discrimination claims. Like any other litigant with a viable case, she should be permitted to develop the record in support of her claims, and the City in turn should be required to present evidence to justify its actions.

I respectfully dissent.