In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1103

JENNIFER SLOAN,

*Plaintiff-Appellant*,

*v.*

AMERICAN BRAIN TUMOR ASSOCIATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 17 C 6509 — **Robert W. Gettleman**, *Judge*.

ARGUED MAY 15, 2018 — DECIDED AUGUST 27, 2018

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges*.

SYKES, *Circuit Judge*. Jennifer Sloan sued her former employer, the American Brain Tumor Association ("the Association"), for unlawful retaliation in violation of the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201 *et seq.* The district judge dismissed the complaint and we affirm. Sloan's allegations, even generously construed, do not remotely support a claim that the Association retaliated against her for asserting rights protected by the Act.

## I. Background

This case comes to us from a dismissal on the pleadings, *see* FED. R. CIV. P. 12(b)(6), so we recount the facts as alleged in the complaint and the documents described in it, giving Sloan the benefit of all reasonable inferences in her favor, *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018).

Sloan began working for the American Brain Tumor Association in September 2014. She had early success, receiving multiple merit raises and strong performance reviews. In February 2016 she was promoted to the position of Director of Corporate and Community Engagement, making her an exempt salaried employee under the FLSA. 29 U.S.C. § 213.

Soon after her promotion, Sloan's relationship with Elizabeth Wilson, the president and CEO of the Association, began to deteriorate. Wilson became confrontational, unfairly criticized Sloan, and antagonized her in front of colleagues. The simmering friction boiled over on February 23, 2017, when Wilson arranged a meeting with Sloan to "air her own personal grievances." One such grievance was that Sloan "bring[s] [her] personal problems to work." Sloan told Wilson that she was "uncomfortable being attacked this way." She also complained that the Association did not have a human-resources department to help resolve the conflict. Wilson sent Sloan home for the day.

The next morning Wilson informed Sloan that she was suspended for six days without pay. Sloan vehemently objected. She again commented on the lack of a human-resources department and stated, "I don't even know if you can do this." Wilson replied: "I'm the President [and] CEO[;] I can do whatever I want."

On Saturday, February 25, Sloan emailed four members of the Association's Board of Directors. The first paragraph of her email stated: "I'm not sure if you're aware of the disciplinary action Elizabeth [Wilson] threatened against me yesterday[,] but it is my understanding that it is against federal law. I am reaching out to you in hopes that the Board will investigate this further." In the second paragraph, Sloan said she was "taking a huge risk" by contacting the Board directly but that it was necessary in "the absence of any HR." The final two paragraphs attacked Wilson's leadership of the Association.

Sloan did not receive an immediate response from the Board. In the meantime, she hired Attorney John Madden, and on March 2, 2017, he emailed a four-page letter to the Board, explaining that he had "been retained by Ms. Jennifer Sloan for advice and representation regarding recent employment actions taken against her in the workplace and potential legal claims arising from her employment."[1] He reiterated Sloan's "objections to the actions of Ms. Wilson, her belief in the illegal nature of the actions and discipline, and [her concern] about the lack of Human Resource personnel with whom she could address Ms. Wilson's conduct." He also warned that if Wilson repeated her false comments about Sloan to others, he "would consider such repetition by Ms. Wilson to be actionable defamation." The letter concluded with a request to "preserve the professional reputation of

---

[1] Sloan did not attach her email or attorney's letter to the complaint. But she mentions them in the complaint and copies were submitted to the district court in connection with the dismissal motion, so they were properly considered in resolving the motion. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481 (7th Cir. 2017).

Ms. Sloan" by "facilitat[ing] an exit for her that is in keeping with her status as a Director of Corporate & Community Engagement."

The following day a Board member forwarded the letter to Wilson, who immediately sent an email to the entire staff stating: "Effective immediately, Jennifer Sloan is no longer employed by the [Association]."

Sloan responded with this lawsuit alleging that she was fired in violation of the FLSA's antiretaliation provision, which makes it unlawful to discharge an employee "because such employee has filed any complaint … under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). The Association moved to dismiss the complaint for failure to state a claim. The judge granted the motion, holding that Sloan's complaints to the Board had nothing to do with rights protected by the FLSA, which regulates minimum wages and maximum hours. As such, a reasonable employer would not be on notice that she was asserting rights protected by the Act.

## II. Discussion

We review the dismissal order de novo. *Tagami v. City of Chicago*, 875 F.3d 375, 377 (7th Cir. 2017). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The FLSA requires employers to pay minimum wages and overtime compensation to nonexempt—i.e., hourly— employees. *See* 29 U.S.C. §§ 206–207. The Act also makes it

unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." § 215(a)(3). To state a retaliation claim under this provision, a plaintiff must plausibly allege that he engaged in activity protected under the Act, his employer took an adverse employment action against him, and a causal link exists between the two. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012).

Sloan's claim founders on the first element. Her complaints to the Board—that is, her email and the letter from her attorney—can qualify as "protected activity" under the Act *only* if "a reasonable employer in [the Association's] circumstances and armed with its knowledge of the relevant context would have had fair notice of [her] assertion of rights protected by the FLSA." *Id.* at 976.

Neither the email nor the letter refers to the FLSA. That's not necessarily fatal; still, a complaint must "be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). The rights protected by the FLSA are those found in the statute's wage-and-hours provisions. *See Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999). To repeat, these provisions require employers to pay a minimum wage and overtime compensation to all nonexempt employees. *See* 29 U.S.C. §§ 206–207.

Sloan was an exempt employee. Indeed, her complaint expressly alleges as much. She insists nonetheless that her

email and her attorney's letter were enough to put a reasonable employer on notice that she was complaining about a violation of her rights under the Act. We cannot see how—and not only because she was an exempt employee. Her email contained only a highly generalized protest that Wilson's "disciplinary action" was "against federal law" and asked the Board to investigate. The attorney's letter merely mentioned Sloan's belief in the "illegal nature of the actions and discipline," which is far too vague to notify a reasonable employer of a suspected violation of FLSA rights.

The email and letter attacked the substantive basis for Sloan's suspension, criticized Wilson's leadership, and protested the absence of a human-resources department. The attorney's letter added an overture to negotiate a favorable exit from the company. Read in context, these complaints to the Board expressed Sloan's frustrations with Wilson and the Association, but no reasonable employer would recognize them as assertions of FLSA-protected rights. *See Kasten*, 563 U.S. at 14 (distinguishing between an employee who "is in fact making a complaint about an Act violation or [is] just letting off steam"); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 44 (1st Cir. 1999) ("[N]ot all abstract grumblings will suffice to constitute the filing of a complaint with one's employer.").

Sloan argues that the email and letter, when considered in the context of her unpaid suspension, would be recognizable as a complaint that the suspension violated 29 C.F.R. § 541.602(b)(5). That rule addresses how to determine if an employee is an exempt salaried employee and generally permits disciplinary suspensions without pay. Sloan's complaints neither referred to her wages or hours, nor challenged her classification as an exempt employee.

Sloan also makes a weak attempt to analogize her case to others in which a generalized complaint about the legality of an employment practice qualified as protected conduct under the Act. But in every case she cites, the employee's complaint, though general, was readily recognizable as an objection that a particular employment practice regarding wages or hours was illegal. *See Kasten*, 703 F.3d at 969 (involving an employee's complaint that the time clock location was illegal); *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (involving an employee's assertion that the employer was "violating the law" by not paying another employee for overtime or travel time); *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992) (involving an employee's complaint that paying higher wages to male employees was "breaking some sort of law"). That is not the case here.

Finally, Sloan's complaint fails for a second and entirely independent reason. For her conduct to be protected, she must have held a good-faith belief that her suspension violated the FLSA. *Sapperstein*, 188 F.3d at 857. And that belief must be objectively reasonable. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (applying the objectively reasonable standard in a Title VII retaliation case); *Spiteri v. AT&T Holdings, Inc.*, 40 F. Supp. 3d 869, 876–77 (E.D. Mich. 2014) (collecting cases that apply the objectively reasonable standard to an FLSA retaliation claim). Sloan's allegations do not plausibly support an inference that she held a good-faith belief that her disciplinary suspension violated her rights under the FLSA. Nor has she identified any colorable legal basis for such a belief.

AFFIRMED.